DALE K. SANDVALL and DONNA L. SANDVALL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sandvall v. Commissioner
Docket No. 45790-85.
United States Tax Court
T.C. Memo 1989-56; 1989 Tax Ct. Memo LEXIS 55; 56 T.C.M. (CCH) 1210; T.C.M. (RIA) 89056; February 7, 1989. Dale K. Sandvall and Donna L. Sandvall, pro se. Deborah H. Delgado and Stephen C. Coen, for the respondent. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1) [1]
Sec. 6653(a)(2)
Sec. 6661
1981
$ 9,660.00
$ 483.00 *
$     0
1982
61,650.00
3,082.50 **
6,165.00
*58 The issues for decision are: (1) whether petitioners are entitled to deduct certain expenses claimed on their 1981 and 1982 joint Federal income tax returns in the total amounts of $ 22,500 and $ 126,500, respectively; (2) whether petitioners are liable for negligence additions under sections 6653(a)(1) and 6653(a)(2) for 1981 and 1982; (3) whether petitioners are liable for the substantial understatement addition under section 6661 for 1982, and if so, what is the correct rate to be applied in computing the addition; and (4) whether damages should be awarded, on this Court's own motion, to the United States and against petitioners under section 6673.
FINDINGS OF FACT Petitioners filed joint Federal income tax returns for the calendar years 1981 and 1982. During the years at issue herein and years prior thereto, petitioner Dale K. Sandvall (Mr. Sandvall) was self-employed as a chiropractor, while petitioner Donna L. Sandvall (Mrs. Sandvall) was a homemaker. At the time the petition in this case was filed, petitioners resided in Arlington, Texas. Petitioners timely filed their petition with this Court on December 27, 1985. Respondent filed a timely answer on February 3, 1986. *59 On January 15, 1987, this Court issued a uniform Standing Pre-Trial Order to the parties. On April 22, 1987, petitioners filed a motion for leave to file an amended petition in which they also requested that this case be consolidated with another case of theirs involving the year 1983. On April 28, 1987, we granted petitioners' motion for leave to file an amended petition and denied their motion to consolidate. Petitioner's amended petition added nothing material to our inquiry in this case. Respondent's certificate of service indicates that an answer to petitioners' amended petition was served on May 28, 1987, but petitioners claim they did not receive the answer until June 12, 1987. On May 13, 1987, petitioners filed a motion for summary judgment, which was denied on May 18, 1987. The calendar call for this case was on June 15, 1987. At such time, petitioners filed a delinquent trial memorandum with the Court. Respondent had previously filed a timely trial memorandum on May 29, 1987, which did not include either petitioner as a witness to be called. At calendar call, respondent moved to quash three subpoenas duces tecum served by petitioners on June 12, 1987. The subpoenas *60 were served on Glenn Cagle, District Director of the Internal Revenue Service (IRS) for the Dallas District; D. Carrothers, IRS Appeals Officer; and Deborah H. Delgado, respondent's counsel in this case. Respondent's motions to quash were granted as to all three subpoenas. The subpoena served on Glenn Cagle requested his testimony and "any other document or documents from any court which states or state that Park Ridge Enterprises * * * is not a valid entity." The subpoenas served on D. Carrothers and respondent's counsel requested testimony and information related to the reason why petitioners were selected for audit. We agreed with respondent's argument that as to all three subpoenas (1) the document requests were unreasonable since all pertinent administrative and legal files were already in the possession of respondent's counsel, and not the persons subpoenaed; and (2) petitioners failed to file a timely trial memorandum or otherwise notify respondent that the subpoenaed persons were to be called at trial as witnesses. Further, Glenn Cagle had no personal knowledge of this case, and the request that he search "all courts" regarding the validity of Park Ridge Enterprises was *61 unreasonable. Moreover, as to the remaining two subpoenas, petitioners claimed that they were illegally selected for audit based on records obtained in violation of grand jury secrecy in the proceedings leading to the decision reversed in United States v. Dahlstrom,713 F.2d 1423 (9th Cir. 1983), cert. denied 466 U.S. 980 (1984). Petitioners were neither the subject of, nor witnesses at, such grand jury proceedings. Respondent's counsel represented to the Court that petitioners were not selected based on any grand jury materials. Further, petitioners were to be given the opportunity at trial to cross-examine the Internal Revenue Agent first assigned to investigate this case, and would thus be able to explore their theory. Respondent served Mrs. Sandvall with a subpoena duces tecum requesting, inter alia, that she bring to trial trust instruments for all trusts to which she was connected during 1981 and 1982. At calendar call, petitioners were ordered to comply with the subpoena. While Mr. Sandvall admitted to the Court that he had a trust in effect during 1981 and 1982, he stated that neither he nor his wife had possession of any related trust *62 instruments. At such time, the Court advised petitioners that it would consider imposing sanctions if they failed to cooperate. This case came to trial on June 18, 1987. That morning, petitioners again served subpoenas duces tecum on respondent's counsel, District Director Glenn Cagle, and Appeals Officer D. Carrothers, which were summarily quashed on the grounds previously stated. The only facts stipulated to by the parties were the authenticity of petitioners' joint Federal income tax returns for 1981 and 1982, and that petitioners resided in Arlington, Texas, at the time the petition was filed. At trial, the Court read to the parties relevant portions of its Standing Pre-Trial Order (Order). The Court pointed to petitioners' failure to comply with the clear and simple requirements of the Order. First, petitioners failed to cooperate with respondent in the stipulation process. Second, although respondent gave petitioner a copy of the documents and materials he expected to use at trial, petitioners refused to reciprocate. Third, both parties failed to submit a Joint Case Status Report to this Court 45 days before calendar call, since a basis for settlement had not been *63 reached. Fourth, petitioner failed to submit a trial memorandum to the Court and respondent as required no later than 15 days before calendar call. Instead, petitioners chose to wait until calendar call to submit their trial memorandum, in which they listed the three witnesses subpoenaed three days before calendar call. In doing so, petitioners failed to give timely notice of witnesses expected to be called, as required by the Order. Petitioners claimed that they delayed submission of their trial memorandum because they were awaiting respondent's answer to petitioners' amended petition. The amended petition added nothing of significance to this case, and petitioners "waiting" was merely a poor excuse. The Order expressly provided that "[w]itnesses who are not identified [in the trial memorandum] will not be permitted to testify at the trial without leave of the Court upon sufficient showing of cause." Petitioners failed to convince this Court of sufficient cause for their direct contravention of the Order. The Order also stated that "[i]f any inexcused failure to comply with this Order adversely affects the timing or conduct of the trial, the Court may impose appropriate *64 sanctions, including dismissal, to prevent prejudice to the other party or imposition on the Court." Petitioners' delinquent trial memorandum listed only respondent's three employees previously subpoenaed. Petitioners were not permitted to call these persons to testify, due to their violation of the Standing Pre-Trial Order and since the subpoenas previously served on these persons had twice been quashed. Petitioners were allowed to testify themselves, but chose not to. Also, since respondent did not list petitioners as witnesses in his trial memorandum, respondent was not permitted to call petitioners as witnesses at trial. Petitioners failed to produce the subpoenaed trust instruments at trial, even after this Court's direct order to do so. Instead, petitioners each submitted signed statements under penalty of perjury, that in their "individual capacities" they "[d]o not have care, custody or control of any records of any trust organizations." Upon the Court's questioning, Mr. Sandvall admitted that he was president of one trust, but stated that he was not a trustee. He claimed he did not have possession, nor could he locate, any of that trust's records. We find petitioners' *65 denial of possession of the trust instruments unbelievable. We now consider the facts surrounding respondent's determined deficiency. This case began in the fall of 1983 through the assignment to Internal Revenue Agent Needham Gray Joyner, Jr. (Agent Joyner) to examine a Nonresident Alien Income Tax Return on Form 1040NR filed for "Park Ridge Enterprises" (Park Ridge). The address on the return was to a post office box in the Turks and Caicos Islands in the British West Indies. The only gross income item listed on the 1981 Form 1040NR was rental income in the amount of $ 10,000. The 1982 Form 1040NR showed gross income totalling $ 126,500. This total was made up of $ 10,000 in equipment rental income, $ 16,500 in office sub-rental income, and $ 100,000 in "labor" income. After claimed deductions, these returns reflected no tax liability. Both Forms 1040NR were signed and filed by Mr. Sandvall as president of Park Ridge. However, initially Agent Joyner was unable to determine whether the examined return was signed by a Dale K. "Sandball" or "Sandvall". The returns were filed at the Philadelphia Service Center, with no return address, bearing a postmark of Forth Worth, Texas. *66 Agent Joyner went to the Tarrant County, Texas courthouse and searched the records for transactions involving Park Ridge and Dale K. "Sandball" and "Sandvall". He found no transactions involving Park Ridge, but found several involving petitioners. Agent Joyner compared the signatures contained on certain real estate deeds to those on the returns, and concluded that they matched. This led Agent Joyner to the examination of petitioners' joint returns on Form 1040 for 1981 and 1982. Our review of petitioners' joint tax returns reveals that they claimed deductions related to the amounts which were included as gross income on 1981 and 1982 returns of Park Ridge. Petitioners also claimed a $ 12,500 "investment expense" itemized deduction on their 1981 return, for which no substantiation was offered by petitioners at trial. Statement 1 to Schedule C of petitioners' 1982 return includes a business expense deduction for "outside labor" in the amount of $ 100,000. This amount corresponds to the $ 100,000 in labor income included on Park Ridge's 1982 Form 1040NR, which is no coincidence. The other amounts do not exactly correspond, but we are satisfied that they were deducted on petitioners' *67 returns. Petitioners had signature authority for a checking account at Texas Commerce Bank in Arlington, Texas in the name of "Dr. Dale K. Sandvall, D.C. - Arlington Chiropractic Arts Center". Mrs. Sandvall had signature authority as Park Ridge Secretary for checking account number XXXXX0516 at Metropolitan Savings and Loan Association of Dallas, Texas (Metropolitan Savings) in the name of Park Ridge. During the years at issue, numerous checks were drawn on the Texas Commerce Bank account and deposited into this Metropolitan Savings account. These transactions further link the deductions claimed on petitioners' returns to income items on Park Ridge's returns. Petitioners had signature authority over a second Metropolitan Savings account, number XXXXX6129, in the name of "Oak Ridge Trust Organization" (Oak Ridge), opened on December 29, 1981. On January 13, 1982, petitioners transferred this account to the name of Park Ridge, and retained joint signature authority. On a financial statement submitted to Texas Commerce Bank in 1982, Mr. Sandvall listed cash totalling $ 59,367 at Metropolitan Savings as a personal asset. Petitioners also had other bank accounts which are not critical *68 to our decision herein. On brief, respondent points to three specific checks among a mass admitted into evidence at trial, drawn on Metropolitan Savings account number XXXXX0516: (1) Check number 379 dated September 13, 1982 in the amount of $ 50,000 was paid to the order of Oak Ridge and signed by Mr. Sandvall as President of Park Ridge; (2) Check number 392 dated October 8, 1982 in the amount of $ 32,760 was paid to "Ed Hick Imports" and signed by Mrs. Sandvall, with a notation on the check which reads "Mercedes 300SD"; and (3) Check number 471 dated December 31, 1982 in the amount of $ 55,000 which was paid to Oak Ridge and signed by Mr. Sandvall as President of Park Ridge. These checks are indicative of the scheme used by petitioners whereby payments were made from petitioners' chiropractic business account to a Park Ridge account, and then payments would be made from a Park Ridge account to an Oak Ridge account or for some seemingly personal purpose. Due to petitioners' failure to produce relevant trust instruments, we know nothing else about Park Ridge or Oak Ridge. As a factual matter, however, we find that petitioners deducted on their 1981 and 1982 returns the correlative *69 gross income items included on Park Ridge's Forms 1040NR for the same years. We also know that Park Ridge made unidentified and unusual payments to Oak Ridge and for an expensive automobile. Other than the foregoing, the sparse record leaves us with little else in which to base our decision. OPINION The first issue for decision is whether petitioners are entitled to deduct certain expenses claimed on their 1981 and 1982 joint Federal income tax returns. The deductions disallowed by respondent fall into two categories. First, respondent disallowed $ 12,500 in "investment expenses" claimed by petitioners as an itemized deduction on their 1981 return. Second, respondent disallowed deductions on petitioners' returns totalling $ 10,000 and $ 126,500 in 1981 and 1982, respectively, representing correlative amounts included in the tax returns of Park Ridge Enterprises for the same years. Respondent contends that Park Ridge is a sham entity and does not constitute a separate legal entity for Federal income tax purposes. Alternatively, respondent contends that if Park Ridge is recognized as a separate legal entity for tax purposes, then it is a trust for which petitioners are treated *70 as the owners under the grantor trust rules, contained in sections 671-679. In contrast, petitioners first contend that they were "illegally" selected for examination by respondent. Second, petitioners contend that Park Ridge is a valid legal entity and that respondent may not determine, nor may we decide, to the contrary. [2]
*71 Dealing with petitioners' first contention, "it is conceivable that there may be situations where a taxpayer should be accorded some relief, if he were able to prove that he was selected for audit on a clearly unjustifiable criterion." Greenberg's Express, Inc. v. Commissioner,62 T.C. 324, 328 (1974). However, "[a]s a general rule, this Court will not look behind a deficiency notice to examine the evidence used or the propriety of respondent's motives or of the administrative policy or procedure involved in making his determinations." Greenberg's Express, Inc. v. Commissioner, supra at 327. We find no facts in this case to indicate that petitioners were in any way "illegally" selected for examination, and we so conclude. As to petitioners' second contention, deductions are a matter of legislative grace and entitlement thereto must be shown by the taxpayer. New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934). The determinations of the Commissioner *72 are presumptively correct, and the taxpayer bears the burden of proving that such determinations are in error. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Park Ridge appears to bear the earmarks of a paper entity structured and operated solely to avoid taxes. This Court has held that transactions conducted between taxpayers and foreign trusts they control will be given no effect for Federal income tax purposes where the trusts are devoid of economic substance. Professional Services v. Commissioner,79 T.C. 888 (1982); Zmuda v. Commissioner,79 T.C. 714 (1982), affd. 731 F.2d 1417 (9th Cir. 1984). However, on the facts of this case, we need not decide whether Park Ridge is a sham entity or a grantor trust, since respondent does not seek to attribute the income of Park Ridge to petitioners. Rather, the simple issue is whether petitioners have substantiated their entitlement to the deductions claimed on their 1981 and 1982 Federal income tax returns. By presenting no evidence at trial, petitioners failed to meet *73 their burden of proof. Accordingly, we hold that respondent's determined deficiencies are correct. The second issue for decision is whether petitioners are liable for the additions to tax under sections 6653(a)(1) and 6653(a)(2) for 1981 and 1982. Section 6653(a)(1) provides for an addition to tax of 5 percent of an underpayment where any part of such underpayment is due to negligence or intentional disregard of the rules or regulations. Section 6653(a)(2) provides for an addition to tax of an amount equal to 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment attributable to negligence or the intentional disregard of the rules or regulations. Petitioners have the burden of proving that respondent's determination of an addition to tax under section 6653(a) is in error. Hatfield v. Commissioner,68 T.C. 895 (1977); Rule 142(a). Petitioners have failed to introduce any evidence to support a determination of error. Further, petitioners must have known that they were not entitled to deductions merely through the simple *74 expedient of setting up Park Ridge. Accordingly, we are impelled to uphold respondent's determination. The third issue for decision is whether petitioners are liable for the substantial understatement addition to tax under section 6661, and if so, what is the correct rate to apply in computing the addition. Respondent determined that petitioners were liable for the addition to tax under section 6661 for 1982. That section imposes an addition to tax equal to a percentage of the amount of any underpayment attributable to a substantial understatement of income tax. "Understatement" is defined as the excess of the amount of tax required to be shown on a return over the amount of tax actually shown on a return. An understatement is "substantial" when it exceeds the greater of $ 5,000 or 10 percent of the tax required to be shown on the return. Thus, there was a substantial understatement, within the meaning of section 6661, on petitioners' 1982 return. Section 6661(b)(2)(B) provides for a reduction in the amount of understatement attributable to items where there is or was substantial *75 authority for the taxpayer's position, or where there has been adequate disclosure of relevant facts affecting the item's tax treatment. Petitioners bear the burden of proof on this issue. Rule 142(a). Petitioners' 1981 and 1982 returns did not adequately disclose their transactions with Park Ridge giving rise to the claimed deductions. Further, petitioners have failed to show substantial authority for their claimed deductions. Accordingly, petitioners can take no comfort in this provision, and we uphold respondent's determination of the applicability of this addition. We must next decide the correct rate to apply in computing the addition under section 6661 for 1982. Respondent determined an addition in the amount of $ 6,165.00, computed at the rate of 10 percent of the underpayment. In respondent's answer to petitioners' amended petition, respondent requested that we decide that there is due from petitioners a 25 percent, rather than a 10 percent, addition to tax in the amount of $ 15,412.50. Section 6661(a) was originally added to the Code by section 323(a) of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324, 613. As it was originally *76 enacted, the section provided for an addition to tax of 10 percent of the amount of any underpayment attributable to a substantial understatement of income tax liability, applicable to returns due after December 31, 1982 (Sec. 323 of the Act, 96 Stat. at 615). In 1986, the Congress passed two acts, each of which amended section 6661(a). The Tax Reform Act of 1986 (TRA 86), Pub. L. 99-514, 100 Stat. 2085, was passed by the House of Representatives on September 25, 1986, and by the Senate on September 27, 1986. TRA 86 amended section 6661(a) by striking out "10 percent" and inserting in lieu thereof "20 percent," effective for returns due after December 31, 1986. Sec. 1504, TRA 86, 100 Stat. at 2743. The Omnibus Budget Reconciliation Act of 1986 (OBRA 86), Pub. L. 99-509, 100 Stat. 1874, was passed by both houses of Congress on October 17, 1986. OBRA 86 amended section 6661(a) by using a 25 percent rate, "effective for penalties assessed after the date of the enactment of this Act." Sec. 8002, OBRA 86, 100 Stat. at 1951. OBRA 86 was signed into law on October 21, 1986, and TRA 86 was signed into law on October 22, 1986. Thus, TRA 86 was passed by both houses of Congress before *77 OBRA 86, but OBRA 86 was signed into law one day before TRA 86. At the time post trial briefs were filed in this case, this Court had yet to resolve the question of what rate should apply in computing the section 6661 addition for the year 1982. However, subsequently, we had occasion to decide that the proper rate of the addition to tax provided by section 6661 is 25 percent on additions assessed after October 21, 1986. Pallottini v. Commissioner,90 T.C. 498 (1988). Respondent's argument correctly foreshadowed our decision on this legal question. We therefore hold that the 25 percent rate applies in this case. The final issue for decision is whether we should award damages on our own motion to the United States and against petitioners, under the authority of section 6673. [3]
*78 We are convinced that this case was instituted and maintained primarily for delay. Petitioners offered no evidence on their own behalf. They failed to follow the Court's Order requiring them to stipulate facts not in dispute and to exchange documents. They persisted in attempting to subpoena respondent's employees after the first subpoenas were quashed. We need not therefore decide whether petitioners' position concerning their transactions with controlled foreign trusts was also frivolous. We merely observe that it was decided by this Court over six years ago that transactions between taxpayers and foreign trusts they control will be given no effect for Federal income tax purposes where such trusts are devoid of economic substance. Professional Services v. Commissioner, supra;Zmuda v. Commissioner, supra.Accordingly, we award damages to the United States under section 6673 in the amount of $ 5,000. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section numbers refer to the Internal Revenue Code in effect for the taxable years 1981 and 1982, and all rule numbers refer to the Rules of Practice and Procedure of this Court. * 50 percent of the interest due on $ 9,660.00. ** 50 percent of the interest due on $ 61,650.00.↩
2. Petitioners' proposed "findings of fact" contained in their brief details their position: 1) Internal Revenue agent Needham Gray Joyner, Jr. lacked legal standing to determine the legitimacy of Park Ridge Enterprises. 2) Internal Revenue agent Needham Gray Joyner, Jr. made an unauthorized determination regarding the legitimacy of Park Ridge Enterprises. 3) The Respondent based his disallowance of Petitioners' legitimate deductions on the unauthorized determination of Internal Revenue agent Needham Gray Joyner, Jr. that Park Ridge Enterprises is a sham entity. 4) The United States Tax Court is not empowered to make any redeterminations based soley [sic] upon the Respondent's determination that Park Ridge Enterprises is a sham entity. 5) The United States Tax Court lacks jurisdiction to make any determination regarding the legal status of Park Ridge Enterprises.↩
3. The statutory language of sec. 6673, as amended, and as applicable in this case, provides: Whenever it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless, damages in an amount not in excess of $ 5,000 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as a part of the tax.↩